## SINGLETON et al. v. SPEAR.

(Court of Civil Appeals of Texas. Dallas. June 3, 1911. Rehearing Denied June 30, 1911.)

VENDOR AND PURCHASER (§ 275*)—VENDOR'S LIEN.

The stockholders of a corporation sold all the stock to a buyer, who gave notes for a part of the price and agreed that the stockholders should manage the sales of the property of the corporation, and that the proceeds should be applied on the notes. The stockholders assisted the buyer to purchase real estate to enable him to carry on the business of the corporation, and indorsed his note for the price. The corporate existence was preserved, even to the extent of the carrying on of its business with a bank in its corporate name. The note given to the vendor of the real estate was paid by the stockholders, as indorsers, by draft on the bank account of the corporation, and one of the stockholders acquired the note indorsed in blank. Subsequently the buyer executed to him a new note. The notes given for the stock remained unpaid and overdrafts of the corporation, which always continued, were covered by the personal notes of the buyer, indorsed by the stockholders. *Held,* that the payee in the new note for the price of the land could enforce it against the buyer, with foreclosure of the vendor's lien, under the rule that equity treats that as done which in good conscience should be done.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 275.*]

Appeal from District Court, Ellis County; F. L. Hawkins, Judge.

Action by J. W. Singleton against A. H. Spear, in which B. F. Kenner, receiver of the Mountain Peak Gin Company, intervenes. From a judgment for defendant, plaintiff and intervener appeal. Reversed and rendered.

G. C. Groce, for appellants. John F. Weeks, for appellee.

TALBOT, J. This suit was instituted by J. W. Singleton, one of the appellants, to recover of the appellee, A. H. Spear, for the use and benefit of the Mountain Peak Gin Company, a private corporation created under the laws of Texas, the sum of $700, with interest and attorney's fees, alleged to be due on a promissory note executed and delivered by the said Spear to the said Singleton, and to foreclose a lien given to secure the payment of said note. B. F. Kenner, who had been appointed receiver of the Mountain Peak Gin Company, intervened in the suit and prayed for all the relief mentioned in the prayer of the plaintiff, Singleton. The defendant answered by a general demurrer, general denial, and plea of payment. The case was tried before the court without a jury, and resulted in a judgment for the defendant, and the plaintiffs and intervener appealed. There is no statement of facts in the record, but the trial court filed the following conclusions of fact, which we adopt, and from which the nature of the suit will more fully appear:

"The Mountain Peak Gin Company was

---

incorporated September 8, 1902, by R. K. Erwin, J. W. Singleton, and J. P. Bellew, with a capital stock of $5,000, in shares of $100 each, all of which was subscribed by said parties, who became directors of such corporation, and were such April 11, 1907, since which date no directors of such corporation have been elected.

"On the 11th day of April, 1907, said Erwin, Singleton, and Bellew, parties of the first part, and appellee, Spear, party of the second part, entered into a written contract, by which the first parties say they 'have this day sold to A. H. Spear the entire stock of the Mountain Peak Gin Company' for $1,000 cash and two notes of $1,750 each, due January 1, 1908 and 1909, respectively, with interest at 8 per cent. per annum, payable annually, to secure payment of which said Spear agreed to 'put up all the stock of said corporation until both notes and interest, and any other advancements that said parties of the first part may have made said Spear,' were paid.

"The contract further provided that insurance on the gin, cotton seed, and cotton should be made to the parties of the first part as their interests might appear, and that they should 'manage sales of cotton and cotton seed of said corporation until said two notes are fully paid,' and that 'all moneys due said corporation will be collected by parties of the first part, also any bills or debts will be paid by parties of the first part,' who agreed to assist Spear to buy bagging, ties, and coal sufficient to start up on, and also in repairing the gin; the parties of the first part agreeing to sell the stock, charter, seal and stock book of the gin company free from any incumbrance.

"Under this contract, control of the gin plant of the Mountain Peak Gin Company was turned over to said Spear, subject to the provisions of said contract that said parties of the first part were to manage sales of the products of such plant until their notes were paid. These notes were executed in accordance with the contract, and sales of the gin products were intrusted to J. W. Singleton, who was to receive $100 per year for his services, to be paid by Spear, and Singleton was authorized to check against the account of the gin company with the bank where it did business.

"At the time of the transaction above shown, said Singleton, Erwin, and Bellew verbally agreed to aid said A. H. Spear, who was a married man and the head of a family, in acquiring a residence for himself and family, contiguous to said gin plant, and on April 13, 1907, they procured one W. H. Boothe, with his wife, to sell and convey to said Spear a tract of land described in plaintiff's first amended original petition, to wit, 1⅓ acres of the J. H. Singleton 1,476-acres survey, in Ellis county, Tex., in consideration of $700, evidenced by a note of even date, payable November 1, 1907, with interest from maturity at 10 per cent. per annum, and the usual 10 per cent. attorney's fee clause, which note was signed by said A. H. Spear and indorsed by said Erwin, Singleton, and Bellew. This note, before its maturity, was indorsed in blank by the payee, W. H. Boothe, and thus indorsed was assigned to the Farmers' National Bank of Midlothian, Tex., which held the same at maturity.

"The purpose of said Erwin, Bellew, and Singleton in aiding said Spear in this matter was to effect a sale of the gin plant and to locate said Spear conveniently thereto, and thus enable him the better to manage and carry on the business of said plant, from which it was understood that the notes mentioned in said agreement of the 11th day of April, 1907, should be paid, and said Spear had no other property known to said parties with which to pay said notes, other than as he profited by the operation of said gin plant.

"When said $700 note above mentioned became due, the bank holding the same urged and insisted upon the payment thereof by the parties liable thereon, and notified the indorsers that they desired the payment of the note. Singleton spoke to Spear and told him the bank was demanding payment, whereupon Spear told Singleton that he did not at that time have the money to pay off the note, and would not have until the wind-up of his gin business for that year, and said, 'You will have to take care of it for me,' but did not say or suggest in what way or from what funds. A few days after the note became due said Singleton drew a check or draft against the account of said gin company at the Citizens' National Bank of Waxahachie, Tex., and paid off said note.

"During the business of said Mountain Peak Gin Company with the said last-named bank, on the day the said check was drawn, some deposits were made and other checks drawn, and it is impossible to tell whether the presentation of the check created an overdraft or not, but at the end of the day's business there was an overdraft against said gin company's account. The account with the bank varied from then to the close of the business of the gin company for that year, there being, however, at all times an overdraft, until on the 27th day of February, 1908, at which time the said Mountain Peak Gin Company owed the said Citizens' National Bank the sum of $1,455, and this debt or overdraft was closed up by a personal note of said Spear to said bank, indorsed by said Singleton and Bellew, who acted for themselves and said Erwin.

"This note was paid during the subsequent ginning season, partly out of funds of said gin company and partly by creating another overdraft with the said bank; and when that year's business was closed up it was found

that the indebtedness to the bank of the said gin company was $1,400, and this was also settled by a personal note of Spear to the said bank, indorsed by the said Erwin, Singleton, and Bellew. The account with the said bank ran in the name of the Mountain Peak Gin Company, but the overdrafts were closed up by personal notes, in both instances by personal notes of Spear, indorsed as above stated. Said last note was due the said Citizens' National Bank at the time of the institution of this suit, and has since that time been paid off by said Singleton, Erwin, and Bellew out of their personal funds, and the said Spear paid no part thereof. At all times from the end of the day's business upon the day the $700 note was paid to the termination of the transaction above recited, the indebtedness to the bank has never been less than $700, either by overdraft against the account of said gin company or by the notes heretofore mentioned, or by both together.

"Said $700 note was paid about the date of maturity, and was then delivered to said Singleton, indorsed in blank, who has since continued to hold the same, and about the 7th day of April, 1908, said Spear executed the note, of date November 1, 1907, mentioned in plaintiff's petition and Exhibit B thereto, to wit, a note for $700 payable January 1, 1909, to J. W. Singleton or order, with interest at 10 per cent. per annum, and stipulating for 10 per cent. attorney's fee, if collected by attorney or by suit, and reciting that it was given in renewal and extension of the Boothe $700 note, to all the rights and liens of which the payee of such renewal note was to ɒe subrogated, and as additional security a deed of trust on the land for which such original $700 note was given was executed to T. J. Cole, trustee.

"At the time of the execution of the note last above mentioned, said Spear, with his family, was in the actual use and occupancy of the 1⅓ acres of land mentioned therein, and while said note bears date November 1, 1907, it was really executed about the 7th day of April, 1908, and was dated back to the maturity of the note in renewal of which it purported to be given (that is to say, it was made to date November 1, 1907), because such original note had been paid about that time; and on such 7th day of April, 1908, said Spear executed and delivered to T. J. Cole, trustee, the deed of trust mentioned in said renewal note, in which his wife did not join.

"The note and mortgage mentioned in findings 6 and 7 were executed because Singleton, Erwin, and Bellew insisted that it should be done in lieu of said original note of $700, which had been paid off, as has been hereinbefore stated, and at the time they were executed said original note of $700, then held by said Singleton, would have been delivered to said Spear, if he had de-

manded it, and it was then marked 'Paid' by saiu Singleton.

"On the 14th day of May, 1909, by an order of the district court of Ellis county, in cause No. 7,620 on the civil docket of said court, B. F. Kenner was appointed receiver of the Mountain Peak Gin Company with authority to take the possession, control, and management of the property of said company, and collect such sums as might be due it, and he was still acting as such receiver when this cause was tried.

"On January 20, 1909, said Spear procured W. H. Boothe and wife to execute to him an absolute deed to the land hereinabove mentioned, but at the time of so executing the same they were not holders of either of the notes mentioned in these findings, and their original conveyance to said Spear was of record, and contained an express reservation of vendor's lien to secure payment of the original note given for the purchase money of the land conveyed. The notes hereinabove mentioned were placed in the hands of an attorney for collection, and suit for their collection became necessary, and said Singleton agreed with the attorney with whom said notes were placed to pay 10 per cent. of the amount realized thereof as attorney's fees, which is found to have been reasonable.

"The two notes of $1,750 each to J. P. Bellew, J. W. Singleton, and R. K. Erwin, executed by said Spear pursuant to the contract of April 11, 1907, are wholly due and unpaid, except interest to January 1, 1908, and the purpose of said cause No. 7,620, above mentioned, is to wind up business of the Mountain Peak Gin Company, pay its debts, and distribute the remainder of its assets, if any, to the person entitled, it being alleged that said corporation had forfeited its corporation rights by the failure to pay its franchise taxes; and said Singleton, Bellew, and Erwin are also seeking to recover sums paid by them on the indebtedness above mentioned to said Citizens' Bank.

"While from time to time A. H. Spear executed his personal notes to said Citizens' Bank, indorsed by said Bellew and Singleton, and sometimes by said Erwin, in the manner and for the purposes before stated, yet such notes were in fact paid from the assets of said gin company or by the indorsers and said Erwin, and said Spear never in fact paid anything from his personal means, disconnected with said gin company, upon such notes, and the dealings hereinabove mentioned, between the parties hereto and said Citizens' Bank, were all with the knowledge, consent, and approval of said Spear."

The only assignment of error presented is as follows: "The court erred in concluding from the facts found that neither plaintiff, J. W. Singleton, nor intervener, B. F. Kenner, were entitled to recover, and in rendering judgment for defendant, Spear, and further erred in refusing to enter judgment, ei-

ther for plaintiff, in trust for the Mountain Peak Gin Company, or for B. F. Kenner, as receiver of said gin company."

We are of the opinion the assignment should be sustained, and in support of our conclusion, and as the opinion of this court, adopt the propositions and argument of appellant's counsel, as follows:

"It was the evident purpose of the parties to the contract set out in the second paragraph of the court's findings of fact that the corporate entity of the Mountain Peak Gin Company should be preserved, at least until the notes given by Spear for its stock, and all advances made by Singleton, Erwin, and Bellew to him, were fully paid; and by the contract all the proceeds of the gin plant, as well as the stock, were pledged for such payments, and the sale of the products of the gin plant were to be controlled, for these purposes, for the benefit of Singleton, Erwin, and Bellew; and it further appears that such control was intrusted to Singleton.

"The purchase of the lot herein in question, and the assistance given by Singleton, Erwin, and Bellew in such purchase, was, as found by the court, for the purpose of effecting the stock sale, and to enable Spear to better manage and carry on the ginning business, from which alone it was expected that he would pay the obligations which he incurred under the contract of sale, and might incur for advances thereunder, and lot purchased, under the facts found, constituted an advancement to Spear, within the meaning and intent of said contract. The corporate entity of the gin company was preserved, even to the extent of carrying on its business with the bank in its corporate name.

"The draft on the gin company's bank account in payment of the Boothe note was with Spear's approval, and such payment, under the circumstances found, was not, in law, or in fact, a payment by Spear; it was a payment by the corporation, and with its funds, or credit, which equitably did not discharge such note, and evidently was not intended to do so, and the note being held, indorsed in blank as it was, became an asset of the corporation, which was subrogated to all the rights of the original payee, Boothe.

"The facts found show that none of the parties in interest regarded the Boothe note as discharged by its payment to the bank, which held it at maturity, but all considered such payment a mere temporary arrangement, by which the note was not to be discharged; and the renewal note executed about April 7, 1908, but dated November 1, 1907, was executed, as shown by its recitals and the eighth finding, in extension of said Boothe note, and to Singleton, as the then actual holder of such note.

"There is nothing to show any intent on the part of any person to violate homestead rights, but all the facts show a purpose to extend and secure what all parties then regarded as a just and existing indebtedness. While it appears that at times overdrafts of the gin company were covered by the personal notes of Spear, indorsed by Singleton and Bellew, and sometimes by Erwin, it further appears that such notes were paid, either from assets of the gin company or by the indorsers, and that Spear has never personally paid anything on such notes, or for the land conveyed to him by Boothe and wife, and the effect of the judgment in this case, if approved, is to give him a home for which he has never paid one dollar, but which has been paid for with funds of the gin company, and to which its creditors and the beneficial owners of its stock are entitled; and the findings further show, beyond question, that Singleton, Erwin, and Bellew have superior rights to, or a superior lien upon, such stock, and that they have paid the corporate indebtedness.

"Equity looks to the intent, rather than to the form, of a transaction, and treats that as done which in good conscience should be done. This rule is utterly ignored by the judgment in this case, which seems based on the mere form of the transaction shown, and to disregard, not only the equities of the case, but the evident objects and purposes of the parties."

The judgment of the lower court will be reversed, and as the case appears to have been fully developed judgment will be here rendered in favor of appellant, Singleton, as payee in the renewal note sued on, with foreclosure of lien on the lot described in this petition, for the use and benefit of the Mountain Peak Gin Company.